

NUMBER 13-12-00656-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ERNEST JAY PARR,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the County Criminal Court No. 2
### of Denton County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides and, Perkes
### Memorandum Opinion by Justice Benavides

By four issues, Ernest Jay Parr appeals his conviction for driving while intoxicated, a Class A misdemeanor, for which he was sentenced to 365 days in jail, with the sentence suspended. *See* TEX. PENAL CODE ANN. 49.04 (West Supp. 2013). Parr asserts that: (1) the trial court abused its discretion in permitting expert testimony; (2) the trial court abused its discretion in admitting unreliable scientific evidence; (3) the

evidence was insufficient to support his conviction; and (4) the trial court erred in overruling Parr's jury charge objection.  We affirm.

## I.  BACKGROUND[1]

The State charged Parr by information for driving while intoxicated.  *See id.* The record reveals the following:  on September 21, 2011, Tracy Thompson observed a man, later identified as Parr, "stumbling" out of a bar called "II Charlies" in Denton, Texas.  Thompson further observed Parr enter a vehicle and drive away.  In the process of driving out of the II Charlies parking lot, Thompson saw Parr's vehicle drive over a curb.  Thompson called police and reported her observations.  Thompson later drove her vehicle behind Parr's and followed him to an Albertson's grocery store parking lot, where Parr entered the store.  Police arrived shortly thereafter and Thompson identified Parr's vehicle for officers.

Denton police officers Fermin Velasquez and Bryan Cose responded to Thompson's call.  Officer Velasquez first made contact with Parr as he exited the store with groceries in hand.  Officer Velasquez testified at trial that he made no initial observation of Parr, and that Officer Cose took over the investigation at that point with Officer Velasquez providing "backup."  Officer Cose testified that he also made contact with Parr, who admitted to him that he had been at II Charlies at 3:00 p.m. and had two beers.  Later, Parr admitted to Officer Cose that he had two drinks and one shot.  Officer Cose testified that Parr acknowledged that he hit the curb and explained that it was due to dropping his cell phone in his car, and his attempt to retrieve it.  Officer Cose

---

[1] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to a docket-equalization order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

noted that Parr's breath smelled "extremely strong[] of an alcoholic beverage," he had droopy eyelids, and that his eyes were glassy and bloodshot. According to Officer Cose, Parr also flashed a plumbing inspector's badge and asked Officer Cose for a "break."

Based on Parr's oral admissions and his physical condition, Officer Cose administered three standard field sobriety tests and two "non-standard" tests. The first test is known as the horizontal gaze nystagmus test. Officer Cose defined nystagmus as the involuntary jerking of one's eyes and noted that for non-intoxicated individuals, horizontal gaze nystagmus is not visible to the naked eye, but depressants like alcohol can make the nystagmus visible. According to Officer Cose, the horizontal gaze nystagmus test produces a total of six clues of intoxication for both eyes and four or more clues indicate intoxication. After performing the test on Parr, Officer Cose observed all six clues. Additionally, Parr was swaying during the test. Officer Cose testified that, during the test, Parr remarked that it was bright outside and the sun was reflecting off the tip of Officer Cose's pen, which Officer Cose used to administer the test.

Officer Cose testified that he administered a second standard field sobriety test known as the "walk-and-turn" test. According to Officer Cose, eight possible clues exist under this test and two clues or more indicate intoxication. Parr told Officer Cose that he had a bad knee, which would affect his performance on this test. Officer Cose testified that he took Parr's bad knee into account and evaluated the test "with that in mind." According to Officer Cose, Parr displayed six clues of intoxication, including: issues with balance, starting too soon, stepping off the line, taking the wrong number of steps, raising his arm during the walk, and turning incorrectly.

Officer Cose testified that he also administered the "one-leg stand" test. In this test, the subject is asked to raise one foot about six inches off the ground, hold his hands down to the side and count out loud to thirty. Furthermore, according to Officer Cose, a total of four possible clues exist and two or more clues indicate intoxication. Parr exhibited three clues. Finally, Officer Cose testified that he administered two "non-standard" tests: in one test, he asked Parr to recite the alphabet beginning with the letter "D" and stopping with the letter "Q;" in the other test, he asked Parr to count backwards from fifty-six down to twenty-seven. According to Officer Cose, Parr did "okay" with the alphabet test and "fairly well" with the counting test.

Officer Cose testified that, based upon Parr's performances during the sobriety tests, in addition to the strong odor of alcohol, droopy eyelids, and bloodshot eyes, he placed Parr under arrest. Additionally, Officer Cose noted that Parr refused to give a breath and blood specimen. Officer Cose also recalled that Parr told him that he had taken a Xanax[2] pill at noon earlier that day. A Xanax prescription pill bottle with Parr's name on the label was found in Parr's vehicle. Police also recovered a receipt from II Charlies inside of Parr's vehicle with a 2:14 p.m. time stamp. Officer Cose read the receipt and stated that Parr purchased two beers and two shots. Officer Cose stated that the receipt reflected two additional drinks that Parr did not admit to drinking.

Pharmacist Paul Thibodeaux testified for the State as an expert witness. According to Thibodeaux, Xanax, like alcohol, is classified as a depressant that affects a person's central nervous system. Thibodeaux testified that combining two depressants

---

[2] According to testimony at trial by pharmacist Paul Thibodeaux, "Xanax" is a brand name of a group of drugs known as benzodiazepines. Another name for the drug is alprazolam. For purposes of this opinion, we will use the term "Xanax."

4

creates a "synergistic effect," and that without regard to dosage, alcohol and Xanax have a synergistic effect. Thibodeaux defined synergistic effect as a strong response when two chemicals or drugs are combined. Thibodeaux testified that Xanax has a "half-life" between 6.3 hours to 26.9 hours in a healthy adult. According to Thibodeaux, a "half-life" is used to describe the original dose of medication and "how long it takes the body to metabolize or break it down or excrete it, half of it." Thibodeaux also stated that it is left to the individual pharmacist's discretion regarding whether to put a warning sticker on a Xanax prescription bottle about the dangers of mixing the drug with alcohol. On cross-examination, Thibodeaux admitted that he had no knowledge of the level of Xanax or alcohol in Parr's system at the time of the arrest.

Gerald Boerner and Molly Prince testified on behalf of Parr. Boerner is in a band with Parr, in which Parr is the lead singer. Boerner testified that their band played two shows the day before Parr's arrest and the second show went until 2:00 a.m. Boerner also stated that Parr had surgery on his knee and that smoke from the bars where their band plays can cause them to have bloodshot eyes. Prince also testified about Parr's knee issues, including his surgery, and how he stumbles at times when he walks.

At trial, the jury returned a guilty verdict against Parr. The trial court sentenced Parr to 365 days in the Denton County Jail and assessed a $1,000 fine. The trial court suspended the sentence, however, and placed Parr on community supervision for 24 months. This appeal ensued.

## II. ADMISSIBILITY OF THIBODEAUX'S TESTIMONY

By his first two issues, Parr argues that the trial court abused its discretion by allowing Thibodeaux to testify as an expert regarding the synergistic effect of alcohol and Xanax because the testimony was irrelevant and unreliable scientific evidence.

### A. Standard of Review

A trial court's decision on whether to admit evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (citations omitted). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380. The inquiry on appeal is whether the result was reached in an arbitrary or capricious manner. *Id.* at 380.

### B. Discussion

#### 1. Relevance

The trial court held a hearing outside the presence of the jury to decide whether Thibodeaux was qualified to testify as an expert. Parr first argues that Thibodeaux's testimony was irrelevant in this case because it invited the jury to speculate from Thibodeaux's testimony that Parr did not have normal use of his physical or mental faculties. We disagree.

Relevant evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* TEX. R. EVID. 401. Furthermore, generally all relevant evidence is admissible. *See id.* R. 402. When determining whether evidence

6

is relevant, we examine the purpose for which the evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved. *Id.*

In this case, the jury was instructed that Parr stood charged with driving or operating a motor vehicle in a public place while intoxicated.[3] The charge defined "intoxicated" as it is defined in the penal code: "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or combination of two or more of those substances into the body." *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (West 2011).

Therefore, to be relevant in this specific case, the evidence needed to influence the jury's determination of whether Parr was intoxicated by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances into the body. The record shows: (1) that Parr admitted to taking a Xanax pill at noon on the day of his arrest; (2) that Parr admitted to having at least two drinks at II Charlies; and (3) that he was arrested approximately four hours, after he consumed the Xanax, for suspicion of driving while intoxicated. Considering the length of time between Parr's ingestion of Xanax and alcohol and the time of his arrest, we conclude that Thibodeaux's testimony was relevant to the State's case, because it was relevant to the jury's determination about whether the combination of Xanax and alcohol contributed to his intoxication. *See id.* Accordingly, we hold that the trial court did not abuse its discretion. Parr's first issue is overruled.

---

[3] By a separate issue, Parr challenges the jury charge. We address his arguments on that issue later in this opinion.

## 2. Reliability

Parr next argues by his second issue that the State did not meet its burden in proving Thibodeaux's testimony to be reliable scientific evidence. We agree.

Scientific evidence has the ability to mislead a jury that is not properly equipped to judge the probative force of the evidence. *Casey v. State,* 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Under Rule 702, it is the responsibility of the trial court to determine whether the scientific evidence offered is sufficiently reliable, as well as relevant, to help the jury in reaching accurate results. *Kelly v. State,* 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). This places the trial judge in the role of a "gatekeeper," whose responsibility is to weed out inadmissible evidence based on a lack of reliability. *Sexton v. State,* 93 S.W.3d 96, 99 (Tex. Crim. App. 2002); *Jordan,* 928 S.W.2d at 555; *Kelly,* 824 S.W.2d at 572. The proponent of scientific evidence bears the burden of proving to the trial court, by clear and convincing evidence, that the evidence is sufficiently relevant and reliable to assist the jury in determining a fact in issue. *Sexton,* 93 S.W.3d at 100; *Jackson v. State,* 17 S.W.3d 664, 670 (Tex. Crim. App. 2000); *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Kelly,* 824 S.W.2d at 573.

In this case, a hearing was held outside the presence of the jury in which the trial court found that Thibodeaux was qualified as an expert "by his training, education, knowledge, and skill." Parr argues that the State did not offer any testimony to satisfy its burden of showing reliability. To be considered reliable, evidence derived from a scientific theory must satisfy three criteria in any particular case: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question. *Kelly,* 824

8

S.W.2d at 573.  To determine reliability of an expert witness's testimony, a trial court should consider the following non-exhaustive factors: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question.  *Id.*

It is undisputed that Thibodeaux is a licensed pharmacist.  Thibodeaux asserted that he was qualified to speak on the effects of Xanax and alcohol on the human body based upon "years of training and on-the-job experience." When pressed on cross-examination during the *Kelly* hearing, Thibodeaux testified that he "believed" by mixing Xanax and alcohol, at any level, the body is "going to have an issue."  When asked further whether he was aware of any studies that support his conclusion that any amount of the Xanax-alcohol combination would create a synergetic effect, Thibodeaux could not provide any.   Thibodeaux also admitted that the level of the amount of Xanax in a person's body would make a difference and that he did not know the specific levels of Xanax or alcohol in Parr's body at the time of the arrest.  Furthermore, Thibodeaux explained that the decision to place a warning sticker on a bottle of Xanax to not mix the drug with alcohol was not mandatory, but instead was at the pharmacist's discretion.

The State argues that his testimony was nevertheless reliable because he had knowledge of the drug's half-life range, as well as of the general effects of the drug based

9

upon his knowledge as a pharmacist, even without knowing the specific levels present in a specific person's body. We find this argument unpersuasive. The State's burden required a showing by clear and convincing evidence, which we believe was not met in this case after analyzing his testimony against the *Kelly* factors—specifically, that the State did not show: (1) that the synergistic theory is accepted as valid by the relevant scientific community; (2) the existence of literature supporting the theory; and (3) the potential rate of error of applying the technique to this case. *Id.* Viewing the evidence in a light most favorable to the trial court's ruling, we conclude that the trial court's decision to allow Thibodeaux to testify about his theory that any amount of the Xanax-alcohol combination would create a synergetic effect was outside the zone of reasonable disagreement and, was therefore, an abuse of discretion because (a) the State did not present sufficient evidence to prove that the theory was valid; (b) the technique applying the theory was not shown to be valid; and (c) the theory was not properly applied on the occasion in question. *See id.*

Because we conclude that the trial court erred, we must now evaluate for harm. *See* TEX. R. APP. P. 44.2(b). Non-constitutional error "that does not affect substantial rights must be disregarded." *Id.* Substantial rights are not affected by the erroneous admission of evidence if, after we examine the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of

the alleged error and how it might be considered in connection with other evidence in the case. *Id.* We may also consider jury instructions, the State's theory, and any defensive theories, closing arguments, and voir dire, if applicable. *Id.* Finally, we may consider the State's emphasis on the error as a factor. *See id.*

The jury heard testimony from Thompson, who initially reported Parr to the police after witnessing him "stumbling" out of II Charlies bar and driving over a curb. Furthermore, the jury heard a substantial amount of testimony from Officer Cose, who described, in detail, that Parr: (1) had droopy eyelids, glassy and bloodshot eyes, and breath smelling of alcohol, (2) performed poorly on the field sobriety tests, and (3) admitted to drinking alcohol and taking Xanax. Officer Cose also opined, based upon numerous factors, that Parr was intoxicated. Furthermore, the State played the dashboard camera footage of the entire investigation for the jury. Parr's counsel also cross-examined Thibodeaux about (1) the various dosages of Xanax that were available, (2) that Thibodeaux was not aware of the strength of the Xanax that Parr had taken, and (3) that Thibodeaux was unaware of the level of Xanax in Parr's system at the time of the arrest. Furthermore, the jury saw Parr's receipt from II Charlie's that afternoon, which indicated how much alcohol he had purchased. During closing arguments, the State and Parr both referenced Thibodeaux's testimony regarding the synergistic-effect theory and metabolism of alcohol and Xanax. Parr's counsel specifically referred back to the defensive theory that Thibodeaux did not know the exact amount of Xanax that Parr consumed that day. Finally, the jury charge provides an additional instruction to the jury to find intoxication under the synergistic-effect theory, but the charge does not narrowly define intoxication solely on the synergistic-effect theory; instead, it allows the jury to find

11

intoxication in other ways.

After reviewing the entire record, we conclude that the trial court's erroneous admission of evidence was harmless because Parr's substantial rights were not affected. *See* TEX. R. APP. P. 44.2(b). Parr's second issue is overruled.

## III. SUFFICIENCY CHALLENGE

By his third issue, Parr contends that the evidence was insufficient to support his conviction.

### A. Standard of Review and Applicable Law

The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State,* 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State,* 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State,* 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State,* 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327

12

(Tex. Crim. App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).   Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.   *Id.*

Under a hypothetically correct jury charge, a person is guilty of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. § 49.04.   "Intoxicated" is statutorily defined as (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (2) having an alcohol concentration of 0.08 or more.   *Id.* § 49.01(2).

## B.  Discussion

Parr argues that insufficient evidence supports Parr's conviction under any of the State's theories of intoxication.   We disagree.

The State presented several theories of liability which allowed jurors to find Parr guilty of driving while intoxicated, including by alcohol, controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances, or any other substance.   When the trial court's charge authorizes the jury to convict on more than one theory, as it did in this case, the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories.   *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

13

Witness Thompson testified that she observed Parr "stumbling" out of II Charlies bar, entering his vehicle, and driving onto public streets in Denton, Texas. Thompson testified that in the process of driving away, Parr ran over a curb. Parr was later confronted by responding police officers, who proceeded with an investigation. Officer Cose testified at length about his assessment of Parr's condition, including his failures on most of the field sobriety tests administered to him. Officer Cose also testified as his observations of Parr's physical appearance that afternoon, including testimony that Parr's breath smelled of an alcoholic beverage, that he had droopy eyelids and bloodshot eyes, and that Parr swayed as he stood speaking to him. Furthermore, the State introduced evidence of Parr's purchases at II Charlies, including two beers and two shots, which were two drinks in excess of what Parr initially told Officer Cose during the investigation that he had consumed. Officer Cose also testified that Parr admitted to taking a Xanax pill earlier that day at noon. Officer Cose also testified that Parr flashed his plumbing inspector's badge and asked Officer Cose to give him a "break." Finally, the record also contains the video recording of Parr's encounter with Officer Cose, including Parr's performances on the various field sobriety tests, which was admitted and published to the jury. The evidence also included several of Parr's defensive theories regarding the incident, including evidence of his injured knee, an explanation as to why he ran over the curb, and testimony about a smoky bar the night before that may have contributed to his bloodshot eyes at the time of his arrest.

After reviewing the evidence in a light most favorable to the prosecution, we conclude that sufficient evidence exists to establish that Parr was intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. § 49.04.

14

Parr's third issue is overruled.

## IV. JURY CHARGE

By his final issue, Parr asserts that the trial court erred by overruling his objection to the inclusion of the synergistic-effect instruction in the jury charge.

### A. Standard of Review

Our first duty in analyzing a jury-charge issue is to determine whether error exists. *See Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). If we find error, we analyze it for harm. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved by objection. *Id.* If the error was preserved by objection, we will reverse if we find "some harm" to the defendant's rights. "Some harm" means any harm, regardless of degree. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (en banc); *see also Atkinson v. State*, 934 S.W.2d 896, 897 (Tex. App.—Fort Worth 1996, no pet.). Under a "some-harm" analysis, we are obligated to determine whether the error was "calculated to injure the rights of the defendant." *See Arline*, 721 S.W.2d at 352. We consider the harmfulness in context of the entire record. *Id.* If no objection was made, we will reverse only if the record shows "egregious harm" to the defendant. *Ngo*, 175 S.W.3d at 743.

### B. Discussion

The entire jury charge in this case contains a statutory-based definition of intoxication that included "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances into the body." *See* TEX. PENAL CODE ANN. § 49.01(A)(2). Furthermore, the trial court included the following instruction:

15

> You are further instructed that if a person by the use of medications or drugs renders himself more susceptible to the influence of intoxicating liquor than he otherwise would have been and by reason thereof became intoxicated from the recent use of intoxicating liquor, he would be in the same position as though his intoxication was produced by the use of intoxicating liquor alone.

Our threshold inquiry in this issue is to determine whether the trial court erred by including the synergistic-effect theory in the charge's instructions. The synergistic-effect theory in this case was based upon Thibodeaux's expert testimony, which we held in Part II(B)(2) of this opinion was erroneously admitted by the trial court. Without the erroneous admission of Thibodeaux's testimony, the synergistic-effect theory of intoxication could not legally have been the basis for a conviction due to insufficient evidence. *See Guevara*, 152 S.W.3d at 53. A trial court shall deliver to the jury a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). By including the *additional* synergistic-theory instruction of "intoxicated" in the charge, the trial court submitted an instruction that was supported by erroneously admitted evidence, and therefore, could not legally have been the basis for a conviction. *See Guevara*, 152 S.W.3d at 53. Therefore, such an instruction given by the trial court was erroneous. Because we find error, we must now evaluate for harm. *See Ngo*, 175 S.W.3d at 743.

Our standard of review for the harm analysis turns upon whether Parr preserved his objection to the error. We conclude that he did. During the charge conference, Parr's counsel made the following objection, which was overruled by the trial court:

16

All right. To paragraph four on the first page, the synergistic charge, we would object to that because there is no evidence that this defendant had any medication in his system that he was made more susceptible to by the influence of intoxicating liquor. As a matter of fact, there's not really any evidence as to how much, if any, alcohol was in his system. So it's inviting the jury to speculate that some kind of synergy took place, and there's no testimony that it did in this particular case. How two things may interact in some other case is not relevant to what was going on in this one particular case.

We now turn to whether the erroneous theory in the jury charge affected the verdict under article 36.19 of the code of criminal procedure as interpreted in *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1984) (en banc). When error was properly preserved, as in this case, we analyze for "some harm"— that is, whether the error was calculated to injure the rights of the defendant in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.* at 171. While some harm means any harm, regardless of degree, *see Arline*, 721 S.W.2d at 351, we must measure the error's harmfulness at least in part against the likelihood that the verdict was actually based on another theory of culpability unaffected by the erroneous charge. *See Atkinson*, 934 S.W.2d at 897. Thus, Parr may prevail on appeal only if he shows some actual harm—i.e., not just theoretical harm, regardless of the theory on which the jury based its verdict. *See id.*; *see also Durden v. State*, 290 S.W.3d 413, 420 (Tex. App.—Texarkana 2009, no pet.).

This additional instruction emphasized and highlighted the State's theory of Xanax-alcohol combination intoxication, as well as Thibodeaux's testimony regarding synergistic effect, similar to the facts found in *Barron v. State*. *See* 353 S.W.3d 879, 884

(Tex. Crim. App. 2011). In *Barron*, the court of criminal appeals found that a synergistic-effect instruction, in addition to the statutory intoxication definition, "emphasized the State's evidence of combination by suggesting a specific mode of action (susceptibility) through which use of a 'medication or drug' together with use of alcohol could produce intoxication." *Id.*

While this additional emphasis on combination provided by the erroneous instruction is relevant to our harm analysis, when weighed against the state of the evidence in this case, it is not as important as in *Barron*. *Cf. id.* (noting that the State needed evidence of pills to prove intoxication). Here, the evidence sufficiently supports a finding of intoxication, as outlined in Part III of this opinion—specifically, Thompson's testimony about her observations of Parr, Parr's admission that he took Xanax that day, Officer Cose's observations about Parr's appearance, comments, and performance on various field sobriety tests, and the video footage of Officer Cose's investigation. Furthermore, the jury was presented with defensive issues, which it was free as fact-finder to weigh, believe, or disbelieve, *see Anderson*, 322 S.W.3d at 405, including Parr's injured knee, the dropped cell phone explanation, and the smoky bar room that Parr's band played in the night before.

While it is undisputed that the State's closing arguments reference Thibodeaux's testimony and its combination theory, the State also discredited Parr's defensive theories, and emphasized Thompson's testimony, Parr's drinking that afternoon, and Parr's poor performances on Officer Cose's various field sobriety tests. Additionally, the State appealed to the jurors, to "use [their] common sense" in finding Parr guilty. Furthermore, we note that Parr's counsel pointed out gaps in Thibodeaux's testimony for the jury to

18

weigh and consider.

Although we recognize that the synergistic-effect instruction delivered in this case may cause harm in some cases, *see, e.g., Barron*, 353 S.W.3d at 884–85, we do not conclude from this record as a whole that such an instruction was calculated to injure Parr's rights so as to make it harmful.   Parr's fourth issue is overruled.

## V.   CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
9th day of January, 2014.