**Sandra Sue FERGUSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–98–00358–CR.**

Court of Appeals of Texas,
Austin.

Sept. 23, 1999.

David L. Cunningham, Killian, Hayden & Cunningham, San Antonio, for Appellant.

Dib Waldrip, County and District Attorney, Edward Alan Jendrzey, New Braunfels, for State.

Before Justices JONES, B.A. SMITH and DALLY [*]

CARL E.F. DALLY, Justice (Retired).

After our original opinion was delivered reversing the trial court's judgment, the State moved to supplement the record and moved for a rehearing. The motion to supplement the record was granted. We have now considered the record as supplemented, withdraw our original opinion and judgment issued July 15, 1999, and substitute this opinion on the State's motion for rehearing.

Appellant Sandra Sue Ferguson was convicted of a misdemeanor offense of operating a motor vehicle in a public place while intoxicated, and the jury found that she had been convicted previously of the offense of operating a motor vehicle while intoxicated. *See* Tex. Penal Code Ann. §§ 49.04, 49.09 (West 1994 & Supp.1999). The trial court assessed appellant's punishment at confinement in the county jail for 365 days and a fine of $750 and placed appellant on community supervision for 24 months.[1]

On appeal, in three points of error, appellant complains of the trial court's jury charge. We will sustain appellant's third point of error, reverse the judgment, and remand the cause to the trial court.

■ In point of error three, appellant asserts that the trial court erred in overruling her objection to the definition of the word "intoxicated" that was included in the

---

[*] Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. This is the punishment clearly stated in the judgment. However, in their briefs, appellant and the State disagree on the punishment assessed, and neither agrees with the punishment stated in the judgment.

court's charge. Appellant urges that this error in the charge was harmful and deprived her of a fair trial. The State responds that: "The trial court properly overruled the specific objection made by appellant requesting the deletion of all intoxicants except alcohol in the jury charge, or alternatively, any error was harmless." The State also argues, alternatively, that appellant's objection was insufficient. We find that the record shows, and that the State has acknowledged, appellant made a timely, specific objection to the court's jury charge. The record shows affirmatively that the trial court understood the objection. Therefore, appellant preserved for appellate review the matter presented in point of error three.

■ "When reviewing charge errors, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal." *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim.App.1994). Because the jury charge is so essential to the jury's deliberations, the charge must include an accurate statement of the law. *See id.* at 731.

■ The statute in pertinent part defines the word "intoxicated" as follows: " 'Intoxicated' means: not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." Tex. Penal Code Ann. § 49.01(2)(A) (West 1994). The trial court in its jury charge defined "intoxicated" as follows:

By the term "intoxicated," as used herein, is meant not having the normal use of one's physical or mental faculties by reason of the introduction of ALCOHOL, A CONTROLLED SUBSTANCE, A DRUG, *A SUBSTANCE OR ITS VAPORS THAT CONTAIN A VOLATILE CHEMICAL, AN ABUSABLE GLUE,*

*OR AN AEROSOL PAINT*, OR A COMBINATION OF TWO OR MORE OF THOSE SUBSTANCES into the body.

The statute does not include within its definition of "intoxication" the words "a substance or its vapors that contain a volatile chemical, an abusable glue, or an aerosol paint." The definition of the word "intoxicated" submitted to the jury was erroneous and constitutes error. However, an erroneous jury charge does not result in automatic reversal of a judgment of conviction. *See* Tex.Code Crim. Proc. Ann. art. 36.19 (West 1981). Therefore, we must consider whether sufficient harm resulted from the error to require reversal of the judgment.

■ "If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than that there must be *some* harm to the accused from the error." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

In *Arline [v. State]*, 721 S.W.2d 348 [(Tex.Crim.App.1986)]; we further explained the "some harm" analysis enunciated in *Almanza*. We initially remarked that the defendant must have suffered " 'some' *actual*, rather than theoretical harm from the error." *Arline*, 721 S.W.2d at 351. However, we further noted that "the presence of *any* harm, regardless of degree ... is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred." *Arline*, 721 S.W.2d at 351 (emphasis in original). *See also*, *Gibson*, 726 S.W.2d at 133. We have recognized, however, that the burden of proof lies with the defendant to "persuade the reviewing court that he suffered *some actual harm* as a consequence of the charging error. If he is unable to do so, the error will not result in a reversal of his conviction." *LaPoint*

*v. State,* 750 S.W.2d 180, 191 (Tex.Cr. App.1986) (Op. on reh'g). *See also, Belyeu v. State,* 791 S.W.2d 66, 75 (Tex.Cr. App.1989).

*Abdnor,* 871 S.W.2d at 732.

 "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171.

 In reviewing the entire jury charge, we find that in the paragraph applying the law to the facts the court merely used the word intoxicated. Therefore, the court's erroneous definition of the word "intoxicated" was incorporated by reference in the application paragraph of the court's charge. The charge as submitted authorized the jury to convict appellant on a theory unsupported by any evidence in the record.

In reviewing the evidence, the record shows that the State's case is supported by the testimony of the arresting officer and another witness who unsuccessfully attempted to administer to appellant an intoxilyzer test. The witnesses noticed the smell of an alcoholic beverage on appellant's breath. Appellant was uncoordinated and unable to maintain her balance. She drove in an erratic manner exceeding the speed limit. She drove for approximately five miles before stopping for the officer attempting to stop her. Appellant testified and admitted that, although she was not intoxicated, while she was in a bar known as Waldo's, she had consumed two drinks containing vodka. One of those drinks was given to her by a man she did not know. After consuming the drink given to her by the stranger, she left the bar. Ten minutes later, while she was driving her vehicle, she became ill. She declared there was no other explanation for her becoming ill than that the stranger had placed some drug in her drink. She testi-fied that, although she became ill, two drinks would not have caused her to become intoxicated. There was no evidence that appellant's alleged intoxication was caused by the introduction into her body "a substance or its vapors that contain a volatile chemical, an abusable glue, or an aerosol paint."

In reviewing the prosecutor's jury argument, we find that he argued:

> She was on medication. We charge that she was intoxicated because, the way the law is written, you can be intoxicated because of alcohol; you can be intoxicated because of drugs; be intoxicated because of paint; you can be intoxicated just by combining everything.
>
> MR. CUNNINGHAM: Your Honor, I don't think it says that you can be intoxicated just because of the pain you're in.
>
> MR. JENDRZEY: No, I said paint.
>
> THE COURT: Paint, he said.
>
> MR. CUNNINGHAM: Oh. Oh, excuse me.
>
> THE COURT: Be governed by the charge, ladies and gentlemen.

The prosecutor in this argument implied that appellant could have been "intoxicated because of paint."

The record of the trial as a whole reveals other relevant information. During the jury charge preparation conference, we find the following:

> MR. CUNNINGHAM [Defense Counsel]: I was just kind of glancing through the charge, and I know this tracks the information; but there's really no evidence of aerosol paint and this other stuff. I was wondering if I can move later to get those deleted and just put alcohol.
>
> THE COURT: Well—
>
> MR. CUNNINGHAM: They all testified to the odor of alcohol, and they didn't find nothing else.
>
> THE COURT: Yeah. I don't know. I mean, probably, you could take out aerosol paint and glue and all that stuff. I

don't know. It doesn't make any difference. It's not critical to the decision—

MR. CUNNINGHAM: I was just trying to plan my argument.

THE COURT: Right, yeah. Well, you can see the nice thing about it, though. Leave it in there, and you can point out that to the Jury. And you can say, "Now, look here what they said here. They said—well, they charged maybe could be aerosol. I mean they didn't find any aerosol paint and all this." So why don't you leave it in there? I mean it makes a nice argument.

MR. CUNNINGHAM: Okay. So, if I understand the Court then, I can make my arguments—

THE COURT: Oh, yeah.

THE COURT: I'll just leave it in there because that's how they're charged; and, that way, they've got their option, you know. And there's no evidence, like you say. You could argue there's no evidence at all about aerosol paint; but it's up to you, you know.

MR. CUNNINGHAM: Yeah, there's no aerosol paint.

THE COURT: Right, right, yeah. I mean that's not what's going to determine the case. They're going to decide whether she was intoxicated. You know where that Waldo's is? You know about Waldo's?

(Out of the presence of the jury, the following proceedings were had.)

MR. CUNNINGHAM: I forgot what you told us to do. Come back here and make objections to the Charge?

THE COURT: Yeah, I've delivered the Court's Charge, proposed charge, to the State and to the Defendant. Does the State have any objection to the Court's Charge?

MR. JENDRZEY: No, your Honor.

THE COURT: Defendant have any objections to the charge?

MR. CUNNINGHAM: Yes, your Honor. Just for the record purposes,

I've already submitted the requested instructions; and they have been filed with your clerk and denied by you. Is that—

THE COURT: Right.

MR. CUNNINGHAM: Okay. The other objection, just to the—it's on the third page under No. 2.

THE COURT: Okay.

MR. CUNNINGHAM: There's a laundry list after the first comma, and alcohol is in all—in all caps, but—and that's fine—but, with regard to the laundry list that goes after that and reads, "a controlled substance comma a drug comma a substance or its vapors that contains a volatile chemical comma an abusable glue comma or an aerosol paint or a combination of two or more of these substances," and then ending right there—no objection to, "into the body"—but ending right there. I object to the inclusion of what I'll just refer to as a laundry list, so I don't have to keep repeating it—

THE COURT: Okay.

MR. CUNNINGHAM:—in there because there's no evidence presented of anything. The only evidence presented would—that would be sufficient would be the odor of alcohol that both police officers said they smelled.

THE COURT: Overruled.

The record also shows that in the information the State charged that appellant "did then and there drive and operate a motor vehicle in a public place, while intoxicated, when the defendant did not have the normal use of her mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, *a substance or its vapors that contain a volatile chemical, an abusable glue, or an aerosol paint,* or a combination of two or more of these substances into the body." (Emphasis supplied.) While the State may allege any manner or means available to prove the offense charged, in this case, there is absolutely no evidence in this rec-

ord to show that the emphasized allegations were made in good faith. The record does show that the matter complained of that was included in the court's charge was not included by mere inadvertence—it was intentional and over appellant's objection. Indeed, the court made an effort to convince appellant's counsel to accept without objection the complained of part of the definition of the word "intoxicated." The court's reason for leaving the erroneous part of the intoxication definition in the charge was because it had been alleged in the information, and because, in the court's opinion, it "makes a nice argument."

■ The information charging the offense, the prosecutor's argument, and the record as a whole purposefully and unjustifiably brought before the jury the matter erroneously included in the jury charge about which appellant timely objected. This all magnified the erroneous jury charge that actually authorized the jury to convict appellant on a theory not supported by any evidence. Appellant, in showing that some actual harm resulted from the erroneous jury charge, should not have the impossible burden of showing that, but for the erroneous jury charge, she would have been acquitted. If that were the test, preserved jury charge error would never result in reversal of the judgment.

Review of preserved jury charge error is controlled by the Code of Criminal Procedure, which in pertinent part provides: "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Tex.Code Crim. Proc. Ann. art. 36.19 (West 1981). We conclude that the record as a whole shows the erroneous jury charge caused appellant some actual harm. In other words, it appears from the record that the charge error "was calculated to injure the rights" of appellant, and "it appears from the record that [appellant] has not had a fair and impartial

trial." Appellant's third point of error is sustained.

The State's motion for rehearing is overruled. The judgment is reversed, and the cause is remanded to the trial court.