

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-1770-10

JERI LEIGH BARRON, Appellant

v.

THE STATE OF TEXAS

On Discretionary Review of Case 05-09-00589-CR
of the Fifth Court of Appeals,
Collin County

Womack, J., delivered the opinion of the Court, in which Price, Johnson, Hervey, Cochran, and Alcala, JJ., joined. Keller, P.J., filed a dissenting opinion. Meyers, J., filed a dissenting opinion. Keasler, J., dissented.

The appellant was convicted of misdemeanor driving while intoxicated, and she appealed. The Fifth Court of Appeals found error in the trial court's "synergistic effect" instruction to the jury.[1] We granted the State's petition for discretionary review on the issue of the Court of Appeals's harm analysis.

Although we do not agree with the way in which the Court of Appeals analyzed the harm

---

[1] *Barron v. State*, No. 05-09-00589-CR, 2010 WL 2183281, 2010 Tex. App. LEXIS 4147 (Tex. App.–Dallas May 27, 2010) (not designated for publication).

caused by the erroneous charge, we agree with its judgment reversing the trial court.

## I. Evidence of Intoxication

State Trooper Eric Estes and Officer Brian Pfahning were the only witnesses testifying for the State. Estes testified that he decided to stop the appellant after he clocked her vehicle going 76 in a 60 miles-per-hour zone. When he got behind the appellant's vehicle, he saw it cross over the white lines a couple of times. After he stopped the vehicle, he approached from the passenger side and shined his flashlight into the passenger window. The appellant did not see him, so he walked to the front of the vehicle and shined his flashlight into the front window. The appellant still did not see him, so he walked back and tapped on the passenger window, at which point she rolled down the window.

When the appellant got out of her vehicle, Estes smelled an odor of alcohol. The appellant first told him that she was coming from work, and then told him that she was coming from happy hour at a bar and grill. Her reaction times were normal. She first said she had drunk one glass of wine that night, but later she said she had drunk two glasses of wine.[2] On a scale of intoxication from one to ten, the appellant stated that she was "maybe a two." She said she was speeding because she thought Estes was trying to go around her.

Estes administered several field sobriety tests to the appellant. She exhibited clues on the horizontal gaze nystagmus, walk-and-turn, and one-leg-stand tests. This indicated to Estes "a level of intoxication." When instructed to recite the alphabet beginning from "G," the appellant recited some letters incorrectly when she reached "W." When the appellant refused a portable

---

[2] The appellant testified that she had one glass of wine at around 6:00 p.m. and another glass of wine at around 10:00 p.m.

breath test, Estes arrested her.

Estes searched the appellant's vehicle after her arrest. Inside the appellant's purse he found a blister pack of eight pills. According to Estes, the pack was labeled simply "hydrocodone" on the back. The jury saw a video recording which shows Estes, another officer, and a tow-truck driver all struggling to read the writing on the package, and concluding that the writing said "hydrocodone" or "hydrocodeine."

Estes testified that four pills were missing from the pack. He could not produce the pills at the trial because he left them either in the appellant's vehicle or in her purse. He said he did not take pictures of the pills because he did not want to charge the appellant with another offense. The appellant told him that the pills were Bonine pills for motion sickness. (Her theory was that Estes misread the packaging. She introduced in evidence a blister pack of eight Bonine pills with the ingredient "meclizine hydrochloride" written on the back.)

Office Brian Pfahning testified as a drug-recognition expert. He testified about the intoxicating effects of hydrocodone and the intoxicating effects of mixing alcohol with hydrocodone. According to Pfahning, mixing alcohol and hydrocodone produces a "cumulative effect," as opposed to an "additive effect" or an "antagonistic effect": "What you have is a one plus one equals a re-enforced [*sic*] one, meaning that it's a cumulative effect. It's not one plus one equals two. It's that the alcohol combined with the medication can enhance the effect of both of [*sic*] the drug and the alcohol to kind of give you a stronger effect."

## II. The Jury Charge

The jury instructions included most of the statutory definition of intoxication by loss of

faculties (omitting the phrase "or any other substance").[3] There also was what is sometimes called a "synergistic effect" instruction:

> The term "intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a drug, a dangerous drug, or a combination of two or more of those substances into the body.
> You are further instructed that if a person by the use of medications or drugs renders herself more susceptible to the influence of intoxicating alcohol than she otherwise would be and by reason thereof became intoxicated from the recent use of intoxicating alcohol, she is in the same position as though her intoxication was produced by the intoxicating alcohol alone.

The appellant timely objected to the submission of the "synergistic effect" instruction, but she did not object to the definition of intoxication. The trial court overruled the objection.

The State conceded in argument that the failure to preserve the pills weakened its case, but maintained that the jury could still find intoxication through either drugs or alcohol:

> We have to prove intoxication. And what does that mean? It means you were affected by whatever you took. You know what? I don't know what she took. I am so mad at that officer for not preserving those pills. I'll just tell you, we are not happy about that. Did not do a good job with that part of the case. We let him know that. He still has a field investigation and you still have evidence of intoxication before you. The alcohol, whether it was drugs, doesn't matter, just so all of you agree it was one of them, we can still prove it through intoxication.

The appellant argued that there was no evidence that the appellant had consumed hydrocodone or any other type of medication.

## III. On Appeal

The Court of Appeals held that the "synergistic effect" instruction was error because it was not raised by the evidence. It was not raised by the evidence because "there is no evidence that appellant ingested hydrocodone, hydrocodeine, or any other prescription medication on the

---

[3] TEX. PEN. CODE §49.01(2)(A).

day in question."[4]

The Court took care to distinguish this error from the question of whether the instruction permitted conviction on a theory not alleged in the information. The Court noted our holding in *Gray v. State*[5] that a "synergistic effect" instruction did not expand on allegations of intoxication due to alcohol. The Court then stated, "But the issue we must decide here is whether the 'synergistic effect' instruction was raised by the evidence, not whether such a charge permitted conviction on a theory not alleged in the charging instrument."[6]

Having decided that the instruction was not raised by the evidence, the Court conducted a harm analysis. The Court first discussed the finding of harm in *Ferguson v. State*,[7] in which the Third Court of Appeals found harm when jury instructions "erroneously authorized the defendant's conviction on a theory that was not supported by the evidence."[8] In this case, the Court reached "a similar conclusion"[9]:

> The State's theory, as alleged in the information, was that appellant "did not have the normal use of her mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." The State

---

[4] *Barron*, 2010 WL 2183281, at *3. Recently in *Ouellette v. State,* ___ S.W.3d ___, 2011 WL 4809822, No. PD-1722-10 (Tex. Cr. App. Oct. 15, 2011), we discussed jury-charge error in a similar case in which substances were found in a car but there was no direct evidence that the appellant had consumed the substances. *Ouellette* is inapplicable in the present case because the State petitioned only for review of the Court of Appeals's harm analysis, not its holding that there was error.

[5] 152 S.W.3d 125, 133-34 (Tex. Cr. App. 2004).

[6] *Barron*, 2010 WL 2183281, at *3.

[7] 2 S.W.3d 718 (Tex. App.–Austin 1999, no pet.).

[8] *Barron*, 2010 WL 2183281, at *4.

[9] *Ibid.*

pursued this theory through Estes' testimony and the testimony of Pfahning, the drug recognition expert [who] testified regarding intoxication by drugs and the synergistic effect of drugs and alcohol. Furthermore, in its closing argument the State argued that, in proving the required element of intoxication, "The alcohol, whether it was drugs, doesn't matter, just so all of you agree it was one of them, we can still prove it through intoxication." There is, however, no evidence in this record that appellant ingested any intoxicating substances other than alcohol. Accordingly, we conclude that the record as a whole shows the trial court's error caused appellant some actual harm, that is, it appears from the record that the charge error "was calculated to injure the rights" of appellant, and "it appears from the record that appellant has not had a fair and impartial trial."[10]

We granted discretionary review only as to the Court's harm analysis.

The State argues that because *Gray* held that a "synergistic effect" instruction does not expand the theory of intoxication beyond intoxication by alcohol, a harm analysis should ask only "whether the jury would have convicted the defendant based on her alcohol consumption alone, without considering the synergistic effect of a drug."

## IV. Analysis

Article 36.14 of the Code of Criminal Procedure requires that the judge shall deliver to the jury "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." If the trial court is found to have erred in its charge, Article 36.19 provides that "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial."

As we explained in *Almanza v. State*, error is "calculated to injure the rights of

---

[10] *Id.*, at *4 (citing TEX. CODE CRIM. PROC. art. 36.19).

defendant" if there is "some harm" to the accused.[11] Errors properly preserved by objection call for reversal "as long as the error is not harmless."[12] Harm must be assayed "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[13]

In this case the Court of Appeals found error because "there is no evidence that the appellant ingested hydrocodone, hydrocodeine, or any other prescription medication on the day in question," and thus "the 'synergistic effect' instruction was not raised by the evidence."[14] But the Court then found "some harm" on the same basis that "there is no evidence in this record that appellant ingested any intoxicating substances other than alcohol."[15]

While we agree with the outcome, the Court's harm analysis simply repeats its error analysis. A proper analysis should follow the guidelines of *Almanza*, assaying the degree of harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[16]

---

[11] 686 S.W.2d 157, 171 (Tex. Cr. App. 1984).

[12] *Id.*; *see also Arline v. State*, 721 S.W.2d 348, 351 (Tex. Cr. App. 1986) ("[T]he presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction.") (emphasis in original).

[13] *Almanza*, 686 S.W.2d, at 171.

[14] *Barron*, 2010 WL 2183281, at *3.

[15] *Id.*, at *4.

[16] 686 S.W.2d, at 171.

The entire jury charge is important in this case, because the charge contained a statute-based definition of intoxication that included "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a drug, a dangerous drug, or a combination of two or more of those substances into the body."[17] The question then becomes whether the appellant was harmed by the trial court's delivery, in addition to the definition of intoxication, of the following instruction: "if a person by the use of medications or drugs renders herself more susceptible to the influence of intoxicating alcohol than she otherwise would be and by reason thereof became intoxicated from the recent use of intoxicating alcohol, she is in the same position as though her intoxication was produced by the intoxicating alcohol alone."

We find that the appellant was harmed by the additional "synergistic effect" instruction. At a minimum, the instruction emphasized the State's evidence of combination by suggesting a specific mode of action (susceptibility) through which use of a "medication or drug" together with use of alcohol could produce intoxication. Officer Pfahning did not introduce this mode of action by testifying that hydrocodone would make the appellant more susceptible to intoxication by alcohol alone – instead he testified that "alcohol combined with the medication can enhance the effect of both of the drug and the alcohol to kind of give you a stronger effect."

The additional emphasis on combination provided by the erroneous instruction was particularly important in light of the state of the evidence. The appellant's testimony that she had consumed only two glasses of wine was not refuted, and the State conceded in opening and closing arguments that the appellant was not heavily intoxicated. The "synergistic effect"

---

[17] *See* TEX. PEN. CODE § 49.01(2)(A). As noted above, the definition excluded the phrase "or any other substance."

instruction supported the State's theory of intoxication despite the evidence of fairly minimal alcohol consumption. As the trial court stated in its analysis of the appellant's Rule 403 objection to Estes's testimony about the pills, and as the State reiterated during a Motion for New Trial hearing reurging the Rule 403 objection, the State needed evidence of the pills to prove intoxication.

The State argues that after *Gray* a "synergistic effect" instruction "cannot have a harmful effect on a theory of intoxication other than the alcohol theory." But harm involves more than simply expanding elements of an offense such that new facts may be used to prove the elements. Harm can also result from an instruction emphasizing a particular theory or the weight to be given to a particular piece of evidence. The "synergistic effect" instruction delivered in this case introduced a specific mode of action and supported the State's theory that the combination of hydrocodone and alcohol produced intoxication. Under the facts of this case we do not find such an instruction harmless.

We affirm the judgment of the Court of Appeals.

Delivered November 9, 2011.
Publish.