

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00276-CR

Brittany Marie **NELSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 1, Bexar County, Texas
Trial Court No. 342742
Honorable Timothy Johnson, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  June 25, 2014

AFFIRMED

On February 7, 2013, Appellant Brittany Marie Nelson was found guilty of misdemeanor driving while intoxicated and sentenced to four months in the county jail, suspended and probated for a term of eleven months, and assessed a fine in the amount of $450.00. On appeal, Nelson contends the trial court erred in including a synergistic effect instruction[1] in the court's charge. We affirm the trial court's judgment.

---

[1] A "synergistic effect" instruction authorizes the jury to convict based on the synergistic effect of combining alcohol and drugs, which renders someone more susceptible to the effect of the alcohol alone.

**FACTUAL BACKGROUND**

On October 7, 2010, Nelson was traveling on a public roadway, in Bexar County, Texas, when she was stopped by San Antonio Police Officer Domingo Flores. Based on Nelson's demeanor, Officer Flores began to suspect Nelson was under the influence of alcohol. Nelson adamantly denied having any alcohol in her system. After conducting several field sobriety tests, Officer Flores placed Nelson under arrest for driving while intoxicated.

A jury was selected and testimony began on February 6, 2013. Officer Flores was the only witness to testify. During Officer Flores's testimony, the State played a video of the traffic stop, taken from the dashboard of Officer Flores's vehicle. The video included the initial stop, the field sobriety tests, and the conversations between Nelson and Officer Flores.

Nelson admitted to Officer Flores that she had taken two prescriptions. Nelson stated that, around 3:00 p.m. that afternoon, she had taken Adderall "for her study issues" and that earlier in the day, about noon, she had taken another medication for her "bi-polar issues."[2] Nelson also told Officer Flores that she takes another medication, Ambien, but she denied taking the Ambien on the day in question.

When asked by Officer Flores, Nelson vehemently maintained that she had not been drinking and denied having *any* alcohol in her system. When Officer Flores confronted Nelson and explained that he could smell alcohol on her breath, Nelson finally admitted she had been drinking at a "wine tasting" around 4:00 p.m. Nelson explained that she worked at a restaurant and the restaurant supplier brought wines to sample and that she had sampled eight different wines. When asked about each sample, Nelson told Officer Flores that each sample was half a glass of wine.

---

[2] The State does not identify the name of Nelson's bi-polar medication. Although Nelson does identify the medication for Officer Flores on the video, the name of the medication is inaudible.

When pushed further, Nelson also conceded she had four "sake shots" in addition to the wine. As their conversation progressed, Nelson tried to explain to Officer Flores that she was a student and needed to get home to finish a class assignment due in the morning. Officer Flores responded that Nelson was going to have a difficult time writing a paper as intoxicated as she was. Nelson replied, "I'm not intoxicated. I'm just like really stressed out. I'm on Adderall. I've taken a bunch of my medication I'm supposed to take."

Nelson acknowledged to Officer Flores that she had been taking the medications for approximately three years. When questioned about consuming alcohol with her medications, Nelson denied being advised that she could not combine her medication with alcohol. "They never really said that I can't take it . . . They said I shouldn't be drinking excessive alcohol. But they said I'm okay on some alcohol." When Officer Flores questioned whether eight half-glasses of wine and four sake shots was excessive, Nelson responded, "No, because that was a long time ago."

### STANDARD OF REVIEW

Appellate review of an alleged jury charge error requires an appellate court make a two-fold inquiry: (1) whether error exists in the jury charge, and (2) whether sufficient harm was caused by the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *accord Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If error exists within the charge, the appellate court analyzes the error for harm. *Middleton*, 125 S.W.3d at 453. If the appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which has been defined to mean that there is "some harm." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)); *accord Ngo*, 175 S.W.3d at 743.

Here, Nelson timely objected to the synergistic effect instruction and the trial court overruled the objection. Our inquiry begins with whether the charge contained error.

**SYNERGISTIC EFFECT INSTRUCTION**

**A.      Argument of the Parties**

Nelson contends the trial court should not have given the synergistic effect instruction because there was no testimony, by either a lay or expert witness, as to what pharmaceuticals were consumed or the potential effects when taken with alcohol. Without such testimony, there is a lack of evidence supporting a synergistic relationship between alcohol and the medication Nelson was taking. Nelson claims the only evidence before the jury was that she ingested some medication, at some point, before the arrest. Nelson argues that because there was no evidence supporting any inference that her use of Adderall rendered her more susceptible to the influence of alcohol, the instruction was not part of the law applicable to the case.

The State argues the video clearly shows Nelson attempted to use her medication to explain the signs of intoxication. Nelson made her prescriptions an issue in this case when she attempted to mitigate her behavior that night by telling Officer Flores that she was not intoxicated but "stressed" and had taken a "bunch" of her medication.

**B.      Trial Court's Charge**

Nelson was charged with "driv[ing] or operat[ing] a motor vehicle in a public place while intoxicated." Section 49.01 of the Texas Penal Code provides that one may become legally intoxicated through the ingestion of "any . . . substance into the body." TEX. PENAL CODE ANN. § 49.01(2)(A) (West 2011). Nelson's charge defined intoxicated as follows:

> A person is deemed to be intoxicated within the meaning of the law when he or she does not have the normal use of his or her mental or physical faculties by reason of the introduction of alcohol into his or her body.

Over Nelson's objection, the trial court also included the following instruction:

> You are further instructed that if a person by the use of medications or drugs renders himself more susceptible to the influence of intoxicating liquor than he otherwise would have been and by reason thereof became intoxicated from the recent use of intoxicating liquor, he would be in the same position as though his intoxication was produced by the use of intoxicating liquor alone.

Although the State's information did not allege a specific intoxicant, the evidence at trial showed Nelson acknowledging taking both prescription medications and consuming alcohol.

To better understand the application of a synergistic effect instruction, we look to the relevant case law.

## C.  Necessary Testimony to Warrant Instruction

Whether the trial court provides a requested instruction is dictated by article 36.14 of the Texas Code of Criminal Procedure.  The code provides:

> the judge shall, before the argument begins, deliver to the jury, . . . a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.

TEX. CODE CRIM. PROC. ANN. art 36.14 (West 2007); *see Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004).  "Relying on that statute, we have held that '[a] trial court is required to fully instruct the jury on the law applicable to the case and to apply that law to the facts presented.'" *Gray*, 152 S.W.3d at 127 (quoting *Jackson v. State*, 633 S.W.2d 897, 899 (Tex. Crim. App. 1982) and *Rider v. State*, 567 S.W.2d 192, 195 (Tex. Crim. App. 1978)).

Although Nelson distinguishes the applicable cases based on the inclusion of expert testimony, we conclude the cases are better distinguished on whether the court's charge expanded the allegations upon which the defendant could be convicted as charged in the State's information.

### 1.  Sutton v. State

In *Sutton v. State*, 899 S.W.2d 682, 683–84 (Tex. Crim. App. 1995), the appellant testified at trial as to what medications and alcohol he had consumed.  Specifically, he told the jury that he

had taken a prescription drug and had consumed two beers. *Id.* at 683. He further acknowledged that his doctor had warned him not to drink alcohol when taking the drug, but that his behavior was "'not because of alcohol [but] because of [his] medication.'" *Id.* at 683–84. An expert provided the jury with an explanation of the potential effect of such combination. *Id.* at 684. Focusing on whether the jury found the appellant guilty of driving under the influence of alcohol or the prescription medication, the court concluded:

> [t]he charge at appellant's trial, when read carefully, allowed conviction only if the jury found that appellant had been intoxicated *with alcohol*, either alone or in combination with a drug that made him *more susceptible to the alcohol*. In either case, the jury had to find that appellant had been intoxicated *with alcohol*, not with the drug. The jury clearly did so, finding appellant guilty 'as charged in the information,' which means the jury found him intoxicated due *solely* by reason of the introduction of alcohol into his body. The jury did *not* find appellant guilty due to intoxication by reason of ingestion of [the prescription medication] or ingestion of [the prescription medication] and alcohol.

*Id.* at 685 (emphasis original). Because the court concluded the jury convicted the appellant consistent with the State's charging instrument, the court affirmed the conviction.

This case is no different. Nelson's jury charge alleged she did "not have the normal use of his or her mental or physical faculties by reason *of the introduction of alcohol* into his or her body." (emphasis added). Accordingly, the jury could have only convicted Nelson based on intoxication by reason of ingestion of alcohol and not by ingestion of alcohol and Adderall or her bi-polar medication.

### 2. Rodriguez v. State

Unlike *Sutton*, in *Rodriguez v. State*, 18 S.W.3d 228, 231 (Tex. Crim. App. 2000), the charge allowed the jury to convict the appellant of intoxication based on either alcohol alone or a combination of unknown drugs and alcohol. The appellant testified that he had not been drinking, but that the medication he had taken for the flu made him drowsy. *Id.* at 229. The crime lab toxicologist testified to the effects of a cold medication similar to the one the appellant testified to

taking. *Id.* The toxicologist also testified to the possible effects of mixing this type of cold medication with alcohol. *Id.*

The Court of Criminal Appeals focused specifically on the charge allowing a conviction based on his being "intoxicated by his use of either alcohol alone or by a combination of unknown drugs and alcohol." *Id.* at 232. Because the instruction improperly expanded the allegations contained within the State's information, the court held the trial court's inclusion of the synergistic instruction was in error. *Id.*

> *3.* Gray v. State

In *Gray v. State*, 152 S.W.3d at 126, the court looked at whether the charge allowed the jury to convict on a theory that was not alleged in the information. The testimony elicited at trial showed that the appellant consumed several drugs in combination with alcohol. *Id.* The State chemist testified the drugs were depressants and would have a synergistic effect on the appellant when present with alcohol. *Id.* at 126–27. The trial court's charge to the jury incorporated both the State's allegation and the evidence presented at trial by instructing the jury that it should convict if it found the appellant had indulged in the drugs "to such an extent that he thereby makes himself more susceptible to the influence of alcohol than he otherwise would have been, and by reason thereof becomes intoxicated from recent use of alcohol." *Id.* at 127.

The court concluded that the charge instructed the jury on the law applicable to the case and "applied the law to the facts of the case." *Id.* at 128. Explaining that the defendant was charged with intoxication by alcohol, the court stated:

> the jury charge permitted finding intoxication by alcohol if the defendant was more susceptible to the alcohol due to drugs. This charge did not permit conviction on a theory unalleged in the charging instrument. This is still the same theory of committing DWI—the 'loss of faculties' theory.
>
> . . . .

[The charge] permitted the jury to convict if [the appellant's] drug use made him more susceptible to alcohol, but it still required intoxication due to alcohol. Therefore, it did not expand on the allegations in the charging instrument, and it properly applied the law to the facts of the case.

*Id.* at 133.

Like *Gray*, Nelson's charge required the jury find intoxication due to Nelson's consumption of alcohol, not Adderall or her bi-polar medication.

**D.**    **Analysis**

Nelson places great emphasis on the fact that the jury did not hear from an expert on the effects of the Adderall or the bi-polar medication. *Cf. Gray*, 152 S.W.3d at 126–27 (State chemist testified to synergistic effect); *Rodriguez v. State*, 18 S.W.3d at 229 (police toxicologist testified to effect of mixing medication and alcohol); *Sutton*, 899 S.W.2d at 684 (forensic science expert testimony that beer would "enhance the effect" of the medication). However, this court has previously held that "a synergism instruction is proper in the absence of expert testimony if evidence is presented at trial that a substance other than alcohol may have contributed to intoxication." *Rodriguez v. State*, 04-07-00136-CR, 2008 WL 939179, at *4–5 (Tex. App.—San Antonio Apr. 9, 2008, no pet.) (mem. op., not designated for publication) (concluding appellant's testimony that she consumed medication for her back and ankle pain and that she had consumed a beer sufficient to raise synergistic instruction). The jury saw the dashboard video and heard Nelson acknowledge she consumed eight half-glasses of wine and four sake shots on the day in question, and that she took "a bunch" of Adderall that afternoon and her bi-polar medication earlier in the day. By her own account, Nelson took the Adderall at 3:00 p.m. and then began drinking at 4:00 p.m. *Cf. Barron v. State*, 353 S.W.3d 879, 882 (Tex. Crim. App. 2011) ("There is no evidence that appellant ingested hydrocodone, hydrocodeine, or any other prescription medication on the day in question.").

In the video, Nelson can be heard arguing with Officer Flores that it was her Adderall that explained her behavior, not her consumption of alcohol. Nelson conceded that "they told her" she should not drink excessively when taking the medications, but that she did not consider her alcohol consumption "excessive." We remain mindful that a trial court must provide a synergism effect instruction when a defendant raises evidence of intoxication due to an interaction with medication. *Gray*, 152 S.W.3d at 127; *Sutton*, 899 S.W.2d at 685.

### CONCLUSION

Based on the record before this court, we find some evidence raising the issue of a synergistic relationship between Nelson's medications and alcohol. We conclude the jury instruction only allowed the jury to convict Nelson if she was intoxicated by the "introduction of alcohol into his or her body." *Sutton*, 899 S.W.2d at 685; *see Gray*, 152 S.W.3d at 128 (concluding charge improperly expands allegations in the indictment when the charge defines intoxication "by a combination of unknown drugs and alcohol"); *see also Otto v. State*, 273 S.W.3d 165, 170 (Tex. Crim. App. 2008) (quoting *Heard v. State*, 665 S.W.2d 488, 490 (Tex. Crim. App. 1984) ("Our decision in *Gray* can be read as approving of the statement that the 'combination of liquor and drugs which would make an individual more susceptible to the influence of the liquor is in effect equivalent to intoxication by liquor alone.'").

Accordingly, the trial court did not err in including an instruction addressing the consumption of Nelson's medications. Having found no error, we need not reach the question of harm. *Almanza*, 686 S.W.2d at 171.

The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice

PUBLISH