**Affirmed and Opinion Filed June 13, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00538-CR

### ZACHARY DANIEL GAGE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 283rd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1470776-T

## MEMORANDUM OPINION
Before Justices Lang, Brown, and Whitehill
Opinion by Justice Whitehill

Appealing from his conviction for intentionally and knowingly causing *serious* bodily injury to an elderly person, appellant asserts that he was harmed because the trial court refused a jury instruction on penal code § 9.31's presumption of reasonableness regarding *ordinary* force.

Specifically, appellant beat his girlfriend's father with his fist at least five times and caused serious bodily injury. He claimed that he acted in self-defense when he was surprised by the victim's sudden and forceful entry into his room. The jury disagreed and found that appellant caused the victim serious bodily injury.

For the reasons explained below, we conclude that appellant did not show that he suffered any harm resulting from the trial court's decision to refuse the requested instruction because that instruction would not have applied to the offense for which the jury found him

guilty. Thus, even if refusing the instruction was error, we conclude that appellant did not suffer some resulting actual harm. We thus affirm the trial court's judgment.

## I. Background

Appellant lived with his girlfriend, Genevieve Clayton, and their baby in Clayton's father's two-bedroom apartment. Clayton's father, Kenneth Hodges, was sixty-seven years old when the offense occurred.

Clayton, appellant, and the baby occupied one of the apartment's bedrooms, and Hodges occupied the other bedroom and the living room. They all shared the kitchen. When Hodges visited Clayton's and appellant's bedroom, he would knock on the door, announce himself, and wait for the door to open.

On the day in question, Hodges was watching television in the living room and heard a high pitched scream coming from Clayton's and appellant's bedroom. Hodges was concerned that Clayton or the baby were in danger because appellant had previously assaulted Clayton.

The door was locked when Hodges went to the bedroom door. He did not knock or ask if everything was all right. Instead, he threw his shoulder into the door and forced it open. Because the door had been "busted open about a week earlier," it did not take a lot of force to open it.

Hodges stopped about a foot inside the bedroom. The bedroom was well-lighted, and he could see "perfectly well." He saw Clayton sitting on the floor, with appellant standing beside her. He determined that Clayton was not in danger, so he stayed at the door.

According to Hodges, he and appellant made eye contact for about five seconds, and appellant knew who he was. Appellant then lunged at Hodges from about three feet away. Hodges dropped to the floor in a fetal position to protect himself.

Appellant straddled Hodges's chest from a standing position and punched Hodges's head four or five times, knocking Hodges's glasses off of his face. Hodges said that he remembered the first painful blow to his nose, but did not remember the blows to his forehead and eyes.

When the beating stopped, the blood from Hodges's wounds was flowing into his eyes, making it difficult to see. But Hodges managed to crawl down the hallway, pull himself to his feet, and call 911 from a neighbor's apartment.

So much blood pooled in Hodges's eye that it turned black, and his left eye was almost completely swollen shut. He had multiple cuts, scrapes and scratches on his forehead, head, and neck, orbital floor and orbital rim factures to both eyes, and a fractured nasal bone. Photographs of Hodges's injuries were admitted into evidence. It took about a month before Hodges recovered and was able to see clearly through his left eye. His forehead was scarred.

Clayton and appellant both testified that he acted in self-defense. Clayton said that she was arguing with appellant about a laundry basket, but she did not scream. Rather, when appellant threatened to dump the clothes in the basket into a dumpster, she said, "No . . .don't" in a slightly raised voice.

Clayton claimed the bedroom was dark because there was a heavy blanket covering the sliding glass door. She was sitting on the floor and appellant was facing her with his back to the bedroom door. After she told appellant "no," she heard a loud noise behind appellant and the door opened. Appellant went to the door, and she saw "his shoulders shift."

Clayton denied that there was a pause or meeting of the eyes before appellant attacked Hodges. Appellant met the intruder at the door and reacted fast.

Clayton believed that appellant was protecting them from an intruder, and did not realize it was Hodges until appellant stopped punching him. Clayton asked, "What are you doing? It's

–3–

my dad," to which appellant responded, "Just love me, I'm sorry." Then appellant called 911 and fled the apartment through the back door.

Clayton was also asked about appellant's assault on her in the same apartment a year earlier. At the time, Clayton said that appellant punched her in the nose and face, knocked her down, stomped on her head, shoulder, and ribs, and fled before the police arrived.

In that case, however, Clayton said that she filed an affidavit of non-prosecution in the case and claimed that she had been confused about what had occurred. According to Clayton, she was not herself at that time because she had recently given birth. Although she would not testify that it was appellant who attacked her, she admitted that he was the only one in the apartment at the time.

Clayton admitted to telling Hodges about the assault, or "what [she] thought happened." Appellant denied the previous assault on Clayton, and claimed that he was in jail when she was assaulted.

With regard to the assault on Hodges, appellant said that he "would never jump on somebody intentionally," and acted in self-defense. He also said that he and Clayton were arguing on the day of the Hodges assault, and Clayton yelled but did not scream. His back was to the door when it burst open, and he did not know it was Hodges. At that time, he was in "fear of everything," and in "survival mode."

Appellant denied that he and Hodges made eye contact. He did not pause to look at the intruder; he "did not think at all." He did not look to see if the intruder had a weapon, he "just reacted" by leaping at the man to defend himself.

When asked how many times he punched Hodges, appellant did not recall. But he did remember standing over Hodges's body with Clayton saying, "stop, stop." At one point he said the punches "must have been in the head," but later said that he did not know he punched

–4–

Hodges's head until he saw him. Appellant said he never would have imagined Hodges would break down the door because he always knocked and announced himself.

Because he was "surprised about what happened," appellant called 911, but he did not wait for the police and EMS to arrive. He did not tell the 911 dispatcher that he was trying to defend himself, nor did he say that the door was kicked in. Instead, he told the 911 operator that the victim had pushed his way into the room.

The jury was instructed on serious bodily injury to an elderly person, as well as on the lesser-included offense of bodily injury to an elderly person. There was also an instruction on self-defense. The trial court denied appellant's requested instruction on the presumption of reasonableness of ordinary force under penal code § 9.31.

The jury found appellant guilty of serious bodily injury to an elderly person and assessed punishment at fifteen years imprisonment and a $2,000 fine.

## II.   Analysis

Appellant's sole issue argues that the trial court erred by refusing his requested instruction on the presumed reasonableness of ordinary force. But as discussed below, we need not decide whether refusing the instruction was error because we conclude that appellant was not thereby harmed.

## A.   Standard of Review

Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error exists, we then determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). To do so, we use the *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g) test. Where, as here, charge error has been properly preserved by an objection to an omitted instruction, we must reverse if the error resulted in "some harm." *See*

*Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003) (citing *Almanza*, 686 S.W.2d at 171)).

This standard requires us to find that the defendant "suffered some actual, rather than merely theoretical, harm from the error." *Reeves v. State*, 420 S.W.3d, 812, 816 (Tex. Crim. App. 2013). In evaluating whether there was some harm, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011) (quoting *Almanza*, 686 S.W.2d at 171).

**B.     Intentionally or knowingly causing serious bodily injury to an elderly individual**

A person commits an offense if he intentionally or knowingly causes serious bodily injury to a person aged sixty five or older. *See* TEX. PENAL CODE ANN. § 22.04(a)(1), (c)(2). The intent to cause bodily injury is the gravamen of the offense. *See Maupin v. State*, 930 S.W.2d 267, 268 (Tex. App.—Fort Worth 1996, pet. ref'd). Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

**C.     Force, deadly force, and the presumption of reasonableness**

The penal code distinguishes between ordinary and deadly force used in self-defense. *See* TEX. PENAL CODE ANN. §§ 9.31, 9.32. Regarding ordinary force, § 9.31 provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a).

On the other hand, § 9.32 provides that "a person is justified in using deadly force against another if the actor would be justified in using force against another under section 9.31 and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force." *Id*. § 9.32(a)(1), (2)(A). Deadly force is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id*. § 9.01.

A presumption of reasonableness instruction, derived from the second clause of § 9.31 or § 9.32 (b), describes the conditions under which the jury must presume that the defendant's belief that use of force or deadly force was immediately necessary was reasonable. *See id*. §9.31, 9.32 (b); *see also Finch v. State*, No., 05-15-00793-CR, 2016 WL 2586142, at *6 (Tex. App.—Dallas May 4, 2016, no pet. h). A statutory presumption favoring a defendant must be submitted to the jury "if there is sufficient evidence of the facts that give rise to the presumption . . . unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." TEX. PENAL CODE ANN. § 2.05(b)(1); *Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011).

Here, appellant claims he was entitled to a presumption of reasonableness instruction under § 9.31. Under that section, appellant was entitled to a presumption of reasonableness instruction if he knew or had reason to believe that Hodges was unlawfully and with force entering, or attempting to enter, appellant's occupied habitation. *See* TEX. PENAL CODE ANN. § 9.31(a)(1)(A). We assume without deciding that the presumption of reasonableness instruction should have been given. *See Villareal v. State*, 453 S.W.3d 429, 435 (Tex. Crim. App. 2015). Our analysis turns on whether denying appellant that instruction caused him some actual harm.

**D.** **Did some actual harm result from the trial court's refusal to instruct the jury on the presumed reasonableness of ordinary force?**

Appellant argues that he was harmed because the charge did not allow the jury to consider the primary issue at trial—whether his use of force was a reasonable response to Hodges's unexpected entry into the room. We disagree.

**1.** **Considering the charge as a whole.**

The first *Almanza* factor, considering the jury charge as a whole, does not favor a conclusion that appellant was harmed. *See Almanza*, 686 S.W.2d at 171. The jury charge included a definition of serious bodily injury to an elderly person as well as the lesser-included offense of bodily injury to an elderly person, thus allowing the jury to consider whether Hodges suffered bodily injury or serious bodily injury. The charge's application paragraph applied the elements of those offenses to the facts of the charged offense.

The charge also included instructions on ordinary force self-defense and deadly force self-defense as follows:

> It is a defense to this prosecution if the defendant's conduct was justified by law.
>
> Under the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.
>
> A person is justified in using deadly force against another if he would be justified in using force against the other person as above stated, and when and to the degree he reasonably believes that deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.
>
> . . .
>
> The term "reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

The application section then applied the facts to the law of self-defense. Specifically, the charge instructed the jury that if it did not find beyond a reasonable doubt that appellant caused

serious bodily injury to Hodges, then it should next consider whether appellant caused him bodily injury.

The jury found appellant guilty of the greater offense of serious bodily injury to an elderly person, which by definition includes a finding that appellant used deadly force against Hodges. *See* TEX. PENAL CODE ANN. §§ 1.07(a) (46), 22.04(a) (1) (c) (2); *Denman v. State*, 193 S.W.3d 129, 135 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (because complainant suffered serious bodily injury defendant necessarily used deadly force).

The requested instruction, however, described the use of ordinary force under *§ 9.31(a),* not the deadly force found by the jury. Appellant did not request a deadly force presumption of reasonableness instruction under *§ 9.32*.[1]

Because the jury found that appellant used deadly force, the ordinary self-defense presumption of reasonableness instruction was inapplicable. Therefore, the court's refusal to include this instruction does not demonstrate harm. *See*, *e.g., Kizer v. State*, No. 06-06-00125-CR, 2007 WL 1673055, at *3 (Tex. App.—Texarkana June 12, 2007, no pet.) (mem. op.) (concluding failure to include inapplicable § 9.31 instruction was not error).

### 2. The Evidence.

We next consider the state of the evidence, *Almanza*, 686 S.W.2d at 171, which shows that an ordinary force instruction would not have affected the trial's outcome.

The evidence established that Hodges suffered serious bodily injuries. Specifically, it was undisputed that he had an orbital floor and orbital rim fractures to both eyes and a fractured nasal bone. And his left eye was almost completely swollen shut, from which it took him about a month to recover.

---

[1] Likewise, appellant does not complain about the omission of a deadly force instruction on appeal.

Although appellant claimed that he acted in self-defense when Hodges burst through the door, the jury rejected this theory when it found appellant guilty of the charged offense. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (guilty verdict is implied finding rejecting self-defense theory). Despite appellant's and Clayton's testimony that appellant did not make eye contact with Hodges, a jury rationally could have concluded that appellant did not reasonably believe that he needed to resort to deadly force. As appellant acknowledged, he did not look to see if the intruder had a weapon before he pounced on him and began beating him with his fists.

In addition, in light of the testimony regarding and Clayton's changed story about whether appellant assaulted her in the past, a rational jury could have concluded that her corroboration of appellant's self-defense theory was not credible.

Finally, the 911 call and appellant's flight undermine his self-defense claim. Appellant told the 911 operator that Hodges pushed his way into the room, rather than the forceful entry he described at trial. And he did not tell the operator he acted in self-defense. Also, when he was told that the police were on the way, appellant fled the scene instead of staying to explain what happened. Thus, the jury could rationally infer that appellant did not act in self-defense. *See Bigby v. State,* 892 S.W.2d 864, 883 (1994) (jury may infer guilt from evidence of flight).

The evidence undermines the plausibility of appellant's self-defense claim, a claim that the jury ultimately rejected. Thus, the state of the evidence does not support a conclusion of harm.

### 3.     Closing Arguments.

We next consider counsel's closing arguments. *Almanza*, 686 S.W.2d at 171. Notwithstanding the requested instruction's absence, both parties addressed the contested issue of whether appellant acted in self-defense.

Appellant's trial counsel argued that appellant "immediately reacted," did not know who the intruder was, and acted reasonably with the intent to protect himself, Clayton, and the baby. Counsel urged that appellant's actions were not knowing or intentional, but rather instinctive. He further argued that appellant did not realize it was Hodges until he stopped beating him.

For example, appellant's counsel argued:

Mr. Hodges did not come and knock on the door. He did not yell out . . . he busted through the door. You see Mr. Hodges. Would you expect Mr. Hodges to bust physically through a door? No. So why do you think that [Appellant] would think that Mr. Hodges would bust through the door, physically force himself into it?

. . . Why does someone bust through a door? What are they intending to do when they bust through a locked door? That's . . . what you need to think about from his perspective. You hear a noise. Is it reasonable to think that someone busting through a door is coming in to do me harm or my family harm? That was reasonable, there was apparent danger. And if he was reasonable and acting in self-defense the law says he's reasonable in acting in defense of third persons.

As to serious bodily injury, appellant's counsel argued that because Hodges wears glasses, it was not possible to say whether his vision loss resulted from his injuries or a pre-existing condition. Appellant's counsel further argued, "there's no permanent disfigurement, there's no loss, therefore the State's failed to prove beyond a reasonable doubt serious bodily injury."

Conversely, the State argued that the injuries to Hodges's face and eyes showed a "very deliberate action." To this end, the State argued "your head, your eyes. How does your fist make contact with someone's eye and you say, I don't know who it was?" The State also argued that Hodges's testimony that he and appellant made eye contact was credible, and appellant's testimony to the contrary was not. Finally, the State argued that Hodges suffered serious bodily injury, as reflected by Hodges's testimony and the photographs that were admitted into evidence.

Both parties' arguments reflect that appellant was not deprived of his sole defense at trial. Appellant's self-defense theory was presented and vigorously argued. But the jury rejected that

–11–

theory and concluded that appellant used deadly force. Therefore, an instruction concerning the use of ordinary force in self-defense would have been of no consequence.

### 4. Other Relevant Information.

The final *Almanza* factor addresses any other relevant information in the record. *Almanza*, 686 S.W.2d at 171. Having reviewed the record, we are not aware of any additional relevant information that requires our consideration.

We conclude that the trial court's failure to include in the self-defense paragraphs a presumption of reasonableness instruction under § 9.31 caused appellant no actual, as opposed to theoretical harm. We thus resolve appellant's sole issue against him.

## III. Conclusion

The trial court's judgment is affirmed.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

150538F.U05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ZACHARY DANIEL GAGE, Appellant

No. 05-15-00538-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1470776-T.
Opinion delivered by Justice Whitehill.
Justices Lang and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 13, 2016.