**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00226-CR**
**NO. 09-22-00227-CR**

_____

**JOSEPH RAYMOND MURPHY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause Nos. 19-31059 and 19-31060**

**MEMORANDUM OPINION**

Appellant Joseph Raymond Murphy was indicted and convicted by a jury of harassment of a public servant and assault on a peace officer.[1] Tex. Penal Code Ann. §§ 22.11(a)(3), 22.01(a), (b)(1). He was sentenced to concurrent twenty-five and

_____

[1] The same City of Beaumont police officer is the complaining witness in both offenses.

1

thirty-four-year terms in the Institutional Division of the Texas Department of Criminal Justice.[2]

In his appeal, Murphy contends that the trial court erred in refusing to instruct the jury regarding involuntary intoxication, and that the State made improper jury argument during the guilt innocence phase of his trial. Finding no reversible error, we affirm the trial court's judgments.

## I. Background

Beaumont police officers responded to a report of a naked man behaving in a belligerent and otherwise inappropriate fashion. When Officer Jonathan Fenner arrived at the scene, Murphy approached him, spat on him, then punched him. Officer Fenner's body camera captured Murphy's actions. The officers present immediately tackled Murphy, who was covered in his own blood from having put his fist through a window. Three officers testified at trial that they believed Murphy was under the influence of a controlled substance, possibly phencyclidine (PCP), at the time of the offenses they described.

Murphy argued at trial that he was *involuntarily* intoxicated when he committed the offenses charged, and he presented the testimony of an acquaintance,

---

[2] Murphy had three previous criminal convictions used for enhancement purposes.

Keith Watson, in support of his defense of involuntary intoxication.[3] Watson confirmed at trial that he had signed a written statement claiming a third party had given Murphy a "joint" that was "laced" with PCP.[4] The written statement, itself, is not in evidence. Watson testified in response to defense counsel's direct questions about the written statement containing his signature, "Q. What part [of the written statement] was not there when you signed it? A. We did this without his knowledge, because I didn't give him nothing." Watson denied that he gave Murphy a PCP-laced "joint." Instead, Watson testified "That I did see 'Bam' give Murphy a joint laced-- a joint. He said it was laced." He was unable to identify "Bam" and nobody who claimed to be "Bam" testified at trial. Watson did not testify as to what the joint was laced with.

## II. Analysis

### Alleged Failure to Instruct the Jury

Appellate review of a purported jury charge error involves a two-step process. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011). First, we must determine whether

---

[3] We refer to this witness by a pseudonym to conceal his identity and protect his privacy. *See Clark v. State*, No. 09-21-00334-CR, 2022 Tex. App. LEXIS 5957, *1 n.1 (Tex. App.—Beaumont Aug. 17, 2022, no pet.) (mem. op., not designated for publication).

[4] In this context, we interpret Watson's testimony to mean that Murphy was given marijuana that contained another drug, presumably phencyclidine.

error exists and, second, we must determine whether sufficient harm resulted from the error to warrant reversal. *See Barron*, 353 S.W.3d at 883 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *see also Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If no error occurred, our analysis ends. *See Kirsch*, 357 S.W.3d at 649. Whether the error was preserved in the trial court determines the degree of harm required for reversal on appeal. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza*, 686 S.W.2d at 171). If error was preserved by objection at trial, to obtain a reversal it requires a showing of "'some harm[.]'" *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (quoting *Almanza*, 686 S.W.2d at 171). If the error was not preserved by objection at trial, to obtain a reversal it requires proof of fundamental harm that was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal*, 453 S.W.3d at 433.

In assessing the degree of harm, we must consider the entire jury charge, the evidence, the argument of counsel, and any other relevant information revealed by the record. *Almanza*, 686 S.W.2d at 171. We examine the charge in its entirety rather than a series of isolated statements. *Holley v. State*, 766 S.W.2d 254, 256 (Tex. Crim. App. 1989); *Iniguez v. State*, 835 S.W.2d 167, 170 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). "[E]gregious harm is a difficult standard to prove and such a

4

determination must be done on a case-by-case basis." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (internal quotations omitted). "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Id.* at 490.

We review a trial court's refusal to include a defensive issue in the charge for an abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). Involuntary intoxication is an affirmative defense. Tex. Penal Code Ann. § 8.01(a) ("It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong."); *Mendenhall v. State,* 77 S.W.3d 815, 817-18 (Tex. Crim. App. 2002) (stating it is an affirmative defense to prosecution that the defendant did not know his conduct was wrong at the time of offense because of severe mental defects caused by involuntary intoxication).

To preserve a complaint for appellate review, the record must show that the appellant made a timely request, objection, or motion to the trial court. In addition, that request, objection, or motion must be sufficiently specific to apprise the trial court of the complaint. Tex. R. App. P. 33.1(a)(1)(A). A jury instruction on a defensive issue is not considered the "law applicable to the case" unless the defendant requests its inclusion or objects to its omission. *See Tolbert v. State*, 306

5

S.W.3d 776, 779-80 (Tex. Crim. App. 2010). The requesting party must either object to its omission or have requested the instruction. Counsel for Murphy asked the trial court to instruct the jury about "involuntary intoxication." The court denied his oral request for an instruction on "involuntary intoxication."

Assuming that Murphy properly requested a jury instruction on involuntary intoxication, thus preserving his appellate complaint, we hold that the trial court correctly denied that instruction because it was not raised by the evidence. *See Collins v. State*, No. 02-18-00449-CR, 2019 Tex. App. LEXIS 8026, at **6-7, (Tex. App.—Fort Worth Aug. 30, 2019, no pet.) (mem. op., not designated for publication) (holding that the defendant ingesting an unknown medication that he believed was hydrocodone, even if it is not hydrocodone, does not constitute involuntary intoxication) *(citing Farmer v. State,* 411 S.W.3d 901, 913 (Tex. Crim App. 2013) (Cochran, J., concurring) (Courts have recognized that a person's intoxication can be involuntary when the intoxication arises because of (1) the fault of another, such as through force, duress, or fraud; (2) the person's own accident, inadvertence, or mistake; (3) a physiological or psychological condition beyond the person's control; or (4) a medically prescribed drug that causes unexpected side effects). The evidence before the trial court suggests that Murphy's voluntary marijuana use may have exposed him to an additional illegal drug that he may not have intended to use. Watson's testimony that Murphy had been given a "joint" that was "laced" [with an

unidentified drug] supports this interpretation of the evidence, as does the officers' testimony about Murphy's mental state. The evidence does not, however, imply that Murphy ingested the "laced" marijuana involuntarily. Nor does the evidence show that Murphy did not know right from wrong. The evidence shows that Murphy voluntarily took and smoked the marijuana cigarette. *See Collins*, 2019 Tex. App. LEXIS 8026, at **6-7, and *see Ramsey v. State*, No. 10-19-00284-CR, 2021 Tex. App. LEXIS 7034, at **6-7, (Tex. App.—Waco Aug. 25, 2021, pet. ref'd, PD-0675-21, *In re Ramsey*, 2021 Tex. Crim. App. LEXIS 966 (Tex. Crim. App., Oct. 6, 2021) (Ramsey claimed an individual, identified only as "Tee," smoked marijuana with him that he thought was just "regular weed" but later he realized it contained "K2" [an intoxicant] which caused him to become "buck naked, foaming at the mouth, vomiting, and swinging his arms like he was fighting demons[]" when he fired twenty rounds from a rifle at his girlfriend who was fleeing the scene in a vehicle). Therefore, the trial court reasonably concluded there was no evidence that Murphy's intoxication was involuntary.

Murphy does not contend that he did not voluntarily use the illegal marijuana containing the alleged additional intoxicant and he does not contend he didn't know right from wrong when he assaulted Officer Fenner. Intoxication is involuntary if the defendant exercised no independent judgment or volition in taking the intoxicant. *See Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim. App. 1979);

7

*Ramsey*, 2021 Tex. App. LEXIS 7034, at \*6. Here, defendant does not claim he exercised no independent judgment or volition in smoking the marijuana, he merely claims he just did not know the marijuana was laced with PCP. Because the evidence, even when viewed in the light most favorable to the defendant, does not establish the defense of involuntary intoxication, an instruction was not required. *See Ramsey*, 2021 Tex. App. LEXIS 7034, at \*6-7. The record shows that Murphy voluntarily smoked marijuana and even if he did not know the marijuana was laced with something else, he was not entitled to an instruction on involuntary intoxication. *See Farmer*, 411 S.W.3d at 908; *see also Collins*, 2019 Tex. App. LEXIS 8026, at \*\*7-8 (defendant ingesting an unknown medication that he believed was hydrocodone, even if it is not hydrocodone, does not constitute involuntary intoxication). Therefore, the trial court properly denied the instruction Murphy sought. We overrule issue one.

**Improper Argument**

In his second issue, Murphy contends that the trial court committed reversible error by permitting the State to argue punishment during the "guilt/innocence phase" of the trial.

Proper jury argument generally falls within one of the following four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; or (4) plea for law

enforcement. *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992) (citations omitted). An instruction to disregard improper remarks will normally cure the error, unless "'in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused,'" in which case, the error is reversible. *Cooks*, 844 S.W.2d at 727.

The State allowed Murphy to address the jury first during closing argument so Murphy's counsel argued first. Among other things, Murphy's counsel addressed the issues surrounding Murphy's mental state at the time of the offense:

> You heard the officers' testimony as to his behavior. If someone is unaware of what's going on around them, how can they form a conscious objective? How can they be aware of what their conduct might result in? Obviously, it's not normal for someone to be walking around bloody from having punched through a window. A normal person, someone in their right mental state, would have never punched through a window in the first place, especially a windshield, and then they would have sought help when they are dripping blood.

During its closing argument, in response to the argument of Murphy's counsel, the State made the following statement: "If you want to take his intoxication into effect, take it into effect on punishment. That's what that's for, to look at mitigation to maybe lower his punishment[.]" Murphy objected to this reference to punishment, and the trial court instructed the jury as follows:

> THE COURT: It's been alluded to by both parties during final argument and you've made an objection to the statement just made by the prosecutor and the law is concrete. Section 8.04 of the Texas Penal Code provides that voluntary intoxication does not constitute a defense to the commission of a crime. Evidence of temporary insanity caused

9

by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

Does everybody understand the Court's additional instructions to the jury based upon the arguments made by counsel? So that the jury understands where the proper placement is for such evidence, it is not in the first phase of the trial. It may be included in the second phase. Proceed.

The defense does not complain about the trial court's instructions to the jury. We assume the jury followed the instructions of the trial court. *Luquis v. State*, 72 S.W.3d 355, 366-67 (Tex. Crim. App. 2002). The State's attorney again referenced the punishment phase of trial when it finished its closing when he stated, "I ask you to find him guilty, and we'll move on to the punishment phase." Murphy did not object to this second punishment reference. We cannot say that the complained of statements were outside the bounds of proper jury argument, and we find the arguments consistent with the instructions given to the jury by the trial court.

Further, even assuming without deciding that such statements were outside the scope of proper argument, we find any such error was harmless. *Martinez v. State,* 17 S.W.3d 677, 692-94 (Tex. Crim. App. 2000) (applying harmless error rule to overruling of objections to jury argument). The evidence of guilt was substantial, the trial court promptly instructed the jury on the law, and based on the entire record we find any prejudice to Appellant was minimal and had no effect on the verdict. *See generally Harris v. State*, 122 S.W.3d 871, 886-87 (Tex. App.—Fort Worth 2003, pet. ref'd) (explaining that an appellate court will examine the entire record as

whole to determine whether "the argument had a substantial and injurious effect or influence on the jury's verdict[]"); *see also Espinoza v. State*, No. 03-02-00339-CR, 2003 WL 21939042, at *2 (Tex. App.—Austin Aug. 14, 2003, no pet.) (mem. op.) (not designated for publication).

We overrule issue two. Having overruled both of Murphy's issues, we affirm the trial court's judgments.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on July 27, 2023
Opinion Delivered September 13, 2023
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.